

RECEIVED
FEB 23 2010
LEGAL DEPT

**Service of Process Transmittal**
02/22/2010
CT Log Number 516192927

**TO:** Todd Aschbacher
Correctional Medical Services, Inc.
12647 OLIVE BLVD
Saint Louis, MO 63141-

**RE:** **Process Served in New York**

**FOR:** Correctional Medical Services, Inc. (Domestic State: MO)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | County of Monroe and Patrick M. O'Flynn, Pltfs. vs. Correctional Medical Services, Inc., Dft. |
| **DOCUMENT(S) SERVED:** | Letter, Summons, Complaint, Exhibit(s) |
| **COURT/AGENCY:** | Monroe County: Supreme Court, NY<br>Case # 09-17281 |
| **NATURE OF ACTION:** | Monies Due and Owing - Services Rendered - Breach of Contract - Amount $2,000,000.00 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, New York, NY |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 02/22/2010 postmarked on 02/18/2010 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after completion of service |
| **ATTORNEY(S) / SENDER(S):** | Marie C. D'Amico<br>39 West Main Street<br>Room 307<br>Rochester, NY 14614<br>585-753-1495 |
| **REMARKS:** | Papers were served on the New York State Secretary of State on 02/16/2010. |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex 2 Day , 792819978057<br>Image SOP<br>Email Notification, Vivian Bernsen vbernsen@cmsstl.com |
| **SIGNED:** | C T Corporation System |
| **PER:** | Christopher Tilton |
| **ADDRESS:** | 111 Eighth Avenue<br>New York, NY 10011 |
| **TELEPHONE:** | 212-894-8940 |

Page 1 of 1 / 5A

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

State of New York - Department of State
Division of Corporations

Plaintiff/Petitioner:
COUNTY OF MONROE

Party Served:
CORRECTIONAL MEDICAL SERVICES, INC.

C/O C T CORPORATION SYSTEM
111 EIGHTH AVENUE
NEW YORK, NY 10011

Dear Sir/Madam:
Enclosed herewith is a legal document which was served upon the Secretary of
State on 02/16/2010 pursuant to SECTION 306 OF THE BUSINESS CORPORATION LAW.
This copy is being transmitted pursuant to such statute to the address
provided for such purpose.

Very truly yours,
Division of Corporations

STATE OF NEW YORK
SUPREME COURT : COUNTY OF MONROE

COUNTY OF MONROE and PATRICK M. O'FLYNN,
as the Sheriff of the County of Monroe,

                                        *Plaintiffs,*      **SUMMONS**

    v.                                                      Index No.:
                                                            09- 17281
CORRECTIONAL MEDICAL SERVICES, INC.                         Filed:

                                        *Defendants.*

## TO THE ABOVE NAMED DEFENDANT:

**YOU ARE HEREBY SUMMONED** and required to serve upon plaintiffs' attorney an answer to the complaint in this action within **twenty (20)** days after the service of this summons, exclusive of the day of service, or within **thirty (30)** days after service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

**PLEASE TAKE NOTICE**, that the plaintiff designates Monroe County as the place of trial. The basis of venue is the plaintiffs' residence. Plaintiff County of Monroe resides at 39 West Main Street, in the City of Rochester, County of Monroe and State of New York, and plaintiff Patrick M. O'Flynn resides at 130 South Plymouth Avenue, in the City of Rochester, County of Monroe and State of New York.

**WILLIAM K. TAYLOR, MONROE COUNTY ATTORNEY**
*Attorney for plaintiff*

Marie C. D'Amico, Esq. of Counsel
Deputy County Attorney
39 West Main Street, Room 307
Rochester, New York 14614
Telephone: (585) 753-1495

Dated:  December 07, 2008

H:\ATTY\D'AMICO\LITIGATION\Collection\CMS (County v.)\CMS -HAS Summons.doc

2

STATE OF NEW YORK
SUPREME COURT : COUNTY OF MONROE

---

COUNTY OF MONROE and PATRICK M. O'FLYNN,
as the Sheriff of the County of Monroe,

*Plaintiffs,*

**COMPLAINT**

v.

Index No.:

CORRECTIONAL MEDICAL SERVICES, INC.

Filed:

*Defendants.*

---

**Plaintiffs County of Monroe and Patrick M. O'Flynn allege as follows:**

1.      Plaintiff County of Monroe is a municipal corporation duly established by the laws of the State of New York, with its administrative offices located at 39 West Main Street, Rochester, New York.

2.      Plaintiff Patrick M. O'Flynn is the duly elected Sheriff of the County Monroe and he maintains his office at 130 South Plymouth Avenue, Rochester, New York.

3.      Upon information and belief, defendant Correctional Medical Services, Inc. {*CMS*} is a foreign corporation duly established by the laws of the State of Missouri.

4.      Upon information and belief, CMS' principal executive office is located at 12647 Olive Boulevard, St. Louis, Missouri.

5.      On December 31, 2003, the plaintiffs entered into a contract with CMS whereby CMS agreed to provide for the delivery by contracted physicians and other healthcare professionals of reasonably necessary medical care and mental health care to individuals under the custody and control of the Monroe County Sheriff at the Monroe County jail facilities {*Facilities*}.

6.      The contract commenced on January 01, 2004 for a term of 36 months.

7.      Pursuant to the terms of the contract it was extended through March 31, 2008.

8.      The contract and its subsequent four (4) amendatory agreements extending its term through March 31, 2008 are attached to this Complaint, incorporated by reference, and hereinafter collectively referred to as the *Contract.*

9.      The Contract required CMS to provide contracted or employed medical, dental, mental health, technical professionals and support personnel as necessary for the rendering of healthcare services to individuals at the Facilities pursuant to a detailed staffing pattern.

10.     CMS failed to provide staffing at the Facilities pursuant to the terms of the Contract.

11.     CMS is in breach of the Contract, because there were staffing shortages throughout its term.

12.     The plaintiffs duly discharged all terms of the Contract on their part to be performed.

13.     The plaintiffs have been damaged in the sum of Two Million Dollars as a result of CMS' breach of the Contract.

**WHEREFORE**, the plaintiffs demand judgment against CMS in the amount of Two Million Dollars ($2,000,000.00), together with interest from January 01, 2004, and the costs and disbursements of this action.

> **WILLIAM K. TAYLOR, MONROE COUNTY ATTORNEY**
> *Attorney for plaintiff*
>
> *Marie C. D'Amico*
>
> Marie C. D'Amico, Esq. of Counsel
> Deputy County Attorney
> 39 West Main Street, Room 307
> Rochester, New York 14614
> Telephone: (585) 753-1495
>
> Dated:  December 07, 2008

H:\ATTY\D'AMICO\LITIGATION\Collection\CMS (County v.)\CMS - HASComplaint.doc

3

# AGREEMENT

**THIS AGREEMENT**, made this 31st day of December, 2003, by and between the **COUNTY OF MONROE**, a municipal corporation, with offices at 39 West Main Street, Rochester, New York 14614, hereinafter referred to as the "County", and **MONROE COUNTY SHERIFF**, a municipal corporation, with offices at 130 South Plymouth Avenue, Rochester, New York 14614, hereinafter referred to as the "Sheriff", and **CORRECTIONAL MEDICAL SERVICES, Inc.**, a Missouri corporation, with offices at 12647 Olive Boulevard, St. Louis, Missouri 63141, hereinafter referred to as the "Contractor" and/or "CMS".

### WITNESSETH:

**WHEREAS**, the County is charged by law with the responsibility for obtaining and providing reasonably necessary medical care and mental health care for inmates under the care and custody of the Monroe County Sheriff at the Monroe County jail facilities ("Facilities"); and

**WHEREAS**, the County desires to provide for health care and mental health care to inmates in accordance with applicable law; and

**WHEREAS**, the County, which provides funding as approved by the Monroe County Legislature for the Facilities, desires to enter into this Agreement with CMS to promote this objective; and

**WHEREAS**, the Monroe County Legislature, by Resolution No.---- of 2003 has authorized this Agreement; and

**WHEREAS**, CMS arranges to provide correctional health care and medical care services and staffing and desires to provide such services for the County and Sheriff under the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the covenants and promises hereinafter made, the parties hereto agree as follows:

1

## 1.  SCOPE OF AGREEMENT.

The Contract Documents include the County's Request for Proposals and Correctional

Medical Services' Response, including but not limited to the cost proposal and the Best and

Final Offer Letter submitted by CMS on or about September 24, 2003, and such documents

are incorporated as fully a part of this Agreement as if attached and repeated herein.    Should

there be an inconsistent term or language in the Contract Documents, it is understood that the

terms and conditions of this Agreement will prevail.

### 1.1. HEALTH CARE AND MENTAL HEALTH CARE SERVICES

1.1.1.  <u>General Engagement</u>.  The County hereby contracts with CMS to provide for

the delivery by contracted physicians and other healthcare professionals of

reasonably necessary medical care and mental  health care to individuals under

the custody and control of the Sheriff of Monroe County at the Facilities. CMS

enters into this Agreement according to the terms and provisions hereof.

1.1.2.  <u>Scope of General Services</u>.  CMS is to establish a program for the provision of

comprehensive health care and mental health care services for Monroe County.

The program is to meet constitutional and community standards of health care

and at a minimum, meet the Standards of the National Commission on

Correctional Health Care for Jails and the State Commission of Correction New

York Jail Standards, and all memoranda issued by the Chairman for the

Commissioner of New York Commission of Correction regarding the provision

of health services in jail facilities.  The responsibility of CMS and its contracted

physicians and healthcare professionals for medical care and mental health care

2

of an inmate commences with the booking and physical placement of said inmate into the Facilities. CMS and its providers shall provide health care and mental health care services for all persons committed to the custody of the Facilities, and those identified in Section 1.1.9.

1.1.3.  CMS shall provide on a regular basis, at its own cost, subject to remuneration from the County as set forth in this Agreement, all professional medical, dental, off-site in-patient hospitalization, and related health care, mental health care and administrative services for the inmates.  This will include a comprehensive health and mental health evaluation of each inmate following booking into the Facilities in accordance with NCCHC Standards, regularly scheduled sick call, nursing care, regular physician and dentist visits to the Facilities, hospitalization, and medical specialty services.  In addition, CMS shall provide emergency medical care, emergency ambulance services when medically necessary, medical records management, pharmacy services management, administrative support services, and other services, all as more specifically described herein.  CMS will additionally treat staff employed by the County within the Facilities for injuries and/or illnesses, but only in an emergency situation and upon request of the Sheriff or his designee; however, CMS will not be responsible for any follow-up off site care or associated cost.

1.1.4.  Ancillary Services.  In addition to providing the general services described above, CMS shall, at its own cost, provide to inmates at the Facilities ancillary services, including but not limited to radiology services and laboratory services,

3

to the extent such are determined to be medically necessary by CMS' contracted physicians. Where non-emergency ancillary care is required and cannot be rendered at the Facilities, CMS shall make arrangements with the Sheriff or his designee for the transportation of the inmates.

1.1.5. Limitations on Financial Responsibility. The County shall be financially responsible for (i) Hepatitis C testing and treatment, and for (ii) the treatment of Hemophilia A/coagulation factor VIII, and (iii) the treatment of Hemophilia B/coagulation factor IX. CMS shall provide any such testing, treatment or medication, and shall invoice the County the actual costs incurred of such testing, treatment and medication, if any, for the preceding month. Reconciliation will take place monthly, and the County shall pay CMS within thirty (30) days after receipt of invoice.

1.1.6. Emergency Services. CMS shall provide emergency medical care, as medically necessary, to inmates through arrangements to be determined by CMS with local hospitals. CMS shall provide for qualified emergency ambulance transportation services when medically necessary in connection with off-site emergency medical treatment.

1.1.7. Limitations on Catastrophic Medical Services: CMS shall arrange for off-site medical services (including but not limited to inpatient hospitalization, outpatient services, emergency services and transportation, off-site specialty consults and professional fees associated with these services) for any inmate who, in the opinion of CMS' contracted on-site physician, requires such care. CMS' liability

4

for the costs associated with the medical services for inmates rendered outside of the Facilities shall be limited to an annual aggregate cap of five hundred thousand dollars ($500,000). If less than the $500,000 is spent, then CMS will return the unspent balance to the County after final reconciliation of invoices. The County shall be responsible for the payment of any and all costs for off-site medical care and services in excess of the $500,000 annual aggregate cap.

1.1.8.   Limitations on Catastrophic Mental Health Medications: CMS shall provide all necessary psychotropic medications. CMS' financial responsibility for such medications shall be limited to an annual aggregate cap of two hundred fifty thousand dollars ($250,000). If less than the $250,000 is spent, then CMS will return the unspent balance to the County after final reconciliation of invoices. The County shall be responsible for the payment of any and all costs for psychotropic medications in excess of the $250,000 annual aggregate cap.

1.1.9.   Injuries Prior to Booking: CMS will not be financially responsible for the cost of any medical treatment or health care services provided to any inmate prior to the inmate's formal booking and commitment into the Facilities.

1.1.9.1.   CMS will not be financially responsible for the cost of any medical treatment or health care services provided to medically stabilize any inmate presented at booking with a life threatening injury or illness or in immediate need of emergency medical care.

1.1.9.2.   Once an inmate has been medically stabilized and committed to the Facilities, CMS will be financially responsible for the cost of all medical

5

treatment for health care services regardless of the nature of the illness or injury or whether or not the illness or injury occurred prior or subsequent to the individual's incarceration at the Facilities subject to the terms and conditions of this Agreement including but not limited to the annual aggregate cap. An inmate shall be considered medically stabilized when the medical condition no longer requires immediate emergency medical care or outside hospitalization so that the inmate can be reasonably housed inside the Facilities.

1.1.10. <u>Pregnancy, Childbirth, and Newborn Well Baby Care</u>. The Sheriff does not pay the cost of newborn care. The Contractor is responsible for the delivery costs as limited by Section 1.1.7 for an inmate, but not for the infant.

1.1.10.1.   The delivery hospital arranges for medical care of the newborn child through County Social Services but in no event is Contractor responsible, financially or otherwise.

1.1.10.2.   The Sheriff will pay transport costs for post partum care and pediatric visits. The inmate either through insurance, direct pay or through Social Service benefits pays for the pediatric care for the child, as arranged by the hospital's social services program, usually through Medicaid but in no event will Contractor be responsible.

1.1.10.3.   The Contractor will be responsible for assisting the inmate in monitoring of the baby's health, but not for any treatment and solely for the purpose of referral to an outside provider in the event the need for medical

6

care arises. However, the Contractor is not responsible, financially or otherwise, for the treatment rendered to the infant.

1.1.10.4.   The Contractor will assist the inmate in providing, delivering and monitoring medications prescribed for the child. However, the cost of such medications will not be the financial responsibility of CMS.

1.1.10.5.   CMS will not be responsible for the cost of transporting any infants rooming with an inmate/mother.

1.1.11. Inmates Outside the Facilities.

1.1.11.1.   Health care services are intended only for those inmates in the actual physical custody of the Facilities. This includes inmates under guard in outside hospitals. Such inmates will be included in the daily population count. No other inmates, including those in outside hospitals, who are not under guard, shall be the responsibility of CMS, nor shall such inmates be included in the daily population count.

1.1.11.2.   Inmates from Other Jurisdictions. Medical care rendered within the Facilities to inmates from other jurisdictions housed in the Facilities pursuant to contracts between the County and such other jurisdictions will be the responsibility of CMS, as limited by Section 1.1.7. and 1.1.10.1. and such inmates will be included as part of the daily population count. CMS will arrange medical care that cannot be rendered in the Facilities, but CMS shall have no financial responsibility for such services. The responsible jurisdiction will be responsible for the cost of outside care and for making

7

such financial arrangements to guarantee payment and assure medical treatment, as it deems appropriate for the individual's care.

1.1.12. Inmates on any sort of temporary release, including, but not limited to, inmates temporarily released for the purpose of attending funerals or other family emergencies, inmates on escape status, inmates on pass, parole or supervised custody who do not sleep in the Facilities at night will not be included in the daily population count, and will not be the responsibility of CMS with respect to the payment or furnishing of health care services. The cost of medical services provided to inmates outside of the Facilities who become ill or are injured while on temporary release will not be the financial responsibility of CMS after their return to the Facilities. This relates solely to the costs relating to the particular illness or injury incurred while on such temporary release; the cost of medical services for other illnesses and injuries will be the responsibility of CMS. Inmates in the custody of other police or other penal jurisdictions at the request of the County are likewise excluded from the population count and are not the responsibility of CMS for the furnishing or payment of health care services.

1.1.13. Responsibility for Work Release and Work Program Inmates. Both parties agree that County inmates assigned to Work Release are personally responsible for the costs of any medical services provided to them outside of the Facility and with out the Facilities' or CMS' approval. CMS may assist with arranging the necessary transportation for Work Release and Work Program inmates to obtain medical care but is not financially responsible for such transportation costs.

8

1.1.14. Elective Medical Care. CMS will not be responsible for providing elective medical care to inmates. For purposes of the Agreement, "elective medical care" means medical care that, if not provided, would not, in the opinion of the treating physician, cause the inmate's health to deteriorate or cause definite harm to the inmate's well being. Such decisions concerning medical care shall be consistent with the applicable American Medical Association (AMA) standards. Any referral of inmates for elective medical care must be reviewed by the Sheriff or his designee prior to provision of such services.

1.1.15. Transportation Services. To the extent any inmate requires off-site non-emergency health care treatment including, but not limited to, hospitalization care and specialty services, for which care and services CMS is obligated to pay under this Agreement, the Sheriff or his Designee will, upon prior request by CMS, its agents, employees or contractors, provide transportation as reasonably available, provided that such transportation is scheduled in advance. When medically necessary, CMS shall provide all emergency ambulance transportation of inmates in accordance with Section 1.1.5 of this Agreement.

1.1.16. Changes in Scope: Notwithstanding anything herein to the contrary, if

    (i)      any applicable law, statute, rule, regulation, standard, collective bargaining agreement (new or existing), court order or decree, judgment of a labor board, or any policy, practice, or procedure of any applicable governmental unit, agency, or office (including but not limited to the federal, state, or local courts, legislative bodies, and

9

agencies, including the County or its respective officers or agents, as well as current state or County funded programs) is adopted, implemented, amended or changed; or if

(ii)     any standard of care or treatment protocol changes or evolves in any material respect, or if any new medication or therapy is introduced to treat any illness, disease or condition; or if

(iii)    any of the cost or historical information upon which CMS based its Proposal, including but not limited to the information provided by the County in the RFP and answers to questions, proves to be inaccurate or incomplete in any respect,

And if any such change in scope as described in (i), (ii), or (iii) materially affects the costs or obligations of CMS or of the County or impacts the scope of services or staffing to be provided hereunder, CMS and County agree to meet to negotiate compensation or service requirement changes. The parties agree to meet and negotiate in good faith within thirty (30) days following the giving of notice by one party to the other party of a change (whether such change is anticipated or implemented). If the parties fail to reach agreement regarding compensation or service requirement changes within the foregoing thirty (30) day period, then either the County or CMS may terminate this Agreement upon one hundred twenty (120) days prior written notice.

1.2. PERSONNEL

1.2.1. Staffing. CMS shall provide contracted or employed medical, dental, mental

10

health, and technical professionals and support personnel as necessary for the rendering of health care services to inmates at the Facilities as described in and required by this Agreement. The attached chart includes the agreed-upon staffing pattern necessary to provide the health care services required by the Facilities for an inmate population of 1325 to 1425 inmates.

1.2.2.  The staffing pattern as proposed is attached hereto as Appendix A – Staffing.

1.2.3.  This staffing pattern is based on the assumption that there will be up to 1425 inmates. Should the inmate population increase to a level greater than a monthly average of 1425 inmates for a period of any calendar month, CMS shall assess an additional cost per inmate per day based on the monthly average of the inmate population. This per diem additional charge adjustment is intended to cover additional costs in those instances where minor, short-term increases in the inmate population result in the higher utilization of routine supplies and services. However, the per diem is not intended to provide for any additional fixed costs, such as new staffing positions, which might prove necessary if the inmate population grows significantly and if the population increase is sustained. In such cases, CMS reserves the right to increase its staffing complement and adjust its contract price in order to continue to provide services to the increased number of inmates and maintain the quality of care, following appropriate notification to the Sheriff or his Designee and the County.

1.2.4.  Licensure, Certification and Registration of Personnel. All contracted physicians and other personnel provided or made available by CMS to render

11.

services hereunder shall be licensed, certified or registered, as appropriate, in their respective areas of expertise as required by applicable New York State Law.

1.2.5.  <u>Sheriff or his Designee Administrator's Satisfaction with Health Care Personnel</u>. If the Sheriff or his Designee becomes dissatisfied with any health care personnel provided by CMS hereunder, or by any independent contractor, subcontractor or assignee, CMS, in recognition of the sensitive nature of correctional services, shall, following receipt of written notice from the Sheriff or his Designee of the grounds for such dissatisfaction and in consideration of the reasons therefor, shall exercise its best efforts to resolve the problem. If the problem is not resolved satisfactorily to the Sheriff or his Designee, CMS shall remove or shall cause any independent contractor, subcontractor, or assignee to remove the individual about whom the Sheriff or his Designee has expressed dissatisfaction. Should removal of an individual become necessary, CMS will be allowed reasonable time, prior to removal, to find an acceptable replacement, without penalty or any prejudice to the interests of CMS. The Sheriff or his Designee shall not discriminate in any unlawful manner against any such individual employed or contracted by CMS.

1.2.6.  <u>Use of Inmates in the Provision of Health Care Services</u>. Inmates shall not be employed or otherwise engaged by either CMS or the Sheriff or his Designee in the direct rendering of any health care services. Upon prior written approval of the Sheriff or his Designee, and with the consent of CMS, inmates may be used in positions not involving the rendering of health care services directly to

12

inmates.

1.2.7.  <u>Subcontracting and Delegation.</u>  In order to discharge its obligations hereunder,

CMS will engage certain health care and mental health care professionals as

independent contractors rather than as employees. The Sheriff or his Designee

may request to approve such professionals, but approval will not be unreasonably

withheld.  Subject to the approval described above, the Sheriff or his Designee

consents to such subcontracting or delegation.   As the relationship between CMS

and these health care and mental health care professionals will be that of

independent contractor, CMS will not be considered or deemed to be engaged in

the practice of medicine or other professions practiced by these professionals.

CMS will not exercise control over the manner or means by which these

independent contractors perform their professional medical duties. CMS shall

inform its on-site independent contractor physicians of the material terms and

conditions of this Agreement. For each agent and subcontractor, including all

medical professionals, physicians, and dentists performing on-site duties as

agents or independent contractors of CMS under this Agreement, CMS shall

provide the Sheriff or his Designee proof, that there is in effect a professional

liability or medical malpractice insurance policy, as the case may be, in an

amount of at least one million dollars ($1,000,000) coverage per occurrence and

three million dollars ($3,000,000) aggregate.

1.3    INSURANCE & INDEMNIFICATION.

CMS will submit a statement and certificates describing issuance of the

13

required insurance that will be furnished by the Contractor.

1.4. ACCREDITATION - Obligation of CMS.

CMS' services shall meet the standards promulgated by the National Commission on Correctional Health Care (NCCHC) for Health Services in Jail Facilities (2003 Edition and any future updates). This obligation shall include the providing of written reports, on-site reviews, preparation of forms and applications and attendance at meetings as required by the Sheriff or his Designee. CMS shall not be responsible for NCCHC requirements not under CMS' direct control or within the scope of CMS services. The health care services program is to meet applicable state and professional standards; specifically included in this requirement are current standards of the National Commission on Correctional Health Care that are applicable for accreditation with respect to the Facilities.

    1.4.1.  Contractor will be required to meet the applicable standards of the National Commission on Correctional Health Care and will be required to obtain NCCHC Accreditation within the first 18 months of this Agreement, and to retain NCCHC accreditation for the duration of the Agreement and any extension.

1.5. EDUCATION - Inmate and Staff Education.

CMS shall conduct an ongoing health education program for inmates. If the Sheriff or his Designee so desires and with the approval of the County, CMS shall conduct the same program for correctional officers at the Facilities.

1.6. REPORTS AND RECORDS

14

1.6.1   <u>Medical Records</u>.  CMS shall cause and require to be maintained complete and accurate medical records for each inmate who has received health care services.

    1.6.1.1 Each medical record will be maintained in accordance with applicable laws, NCCHC standards and the Sheriff or his Designee's policies and procedures.

    1.6.1.2 The medical records shall be kept separate from the inmate's confinement record.  A complete legible copy of the applicable medical record shall be available, at all times, upon reasonable prior notice, to the Sheriff or his Designee and may be available to accompany each inmate who is transferred from the Facilities to another location for off-site services or transferred to another institution.

    1.6.1.3 Medical records shall be kept confidential.   Subject to applicable law regarding confidentiality of such records, CMS shall comply with New York State law and the Sheriff or his Designee's policy with regard to access by inmates and Facilities staff to medical records.   Except as provided by the Sheriff or his Designee's policy, by a court order or subpoena, by written authorization of the inmate, or otherwise in accordance with the applicable law, CMS shall release no information contained in the medical records.

15

1.6.1.4 CMS shall, at its own cost, provide all medical records, forms, jackets, and other materials necessary to maintain the medical records. At the termination of this Agreement, all medical records shall be delivered to and remain with the Sheriff or his Designee. However, the Sheriff or his Designee shall provide CMS with reasonable ongoing access to all medical records even after the termination of this Agreement for the purposes of defending litigation.

1.6.2   <u>Regular Reports by CMS to the Sheriff or his Designee</u>. CMS shall provide to the Sheriff or his Designee, on a date and in a form mutually acceptable to CMS and the Sheriff or his Designee, monthly and annual reports relating to services rendered under this Agreement.

1.6.3   <u>Inmate Information</u>. Subject to the applicable New York State law, in order to assist CMS and its healthcare and mental healthcare professionals in providing the best possible services to inmates, the Sheriff or his Designee will provide CMS and its healthcare and mental healthcare professionals with information pertaining to inmates that the parties mutually identify as reasonable and necessary for CMS and its contractors and employees to adequately perform their obligations hereunder.

1.6.4   <u>CMS Records Available to the Sheriff or his Designee with Limitations on Disclosure</u>. CMS shall make available to the Sheriff or his

16

Designee, at the Sheriff or his Designee's request, all records, documents and other papers relating to the direct delivery of health care services to inmates hereunder upon reasonable prior notice. The Sheriff or his Designee understands that many of the systems, methods, procedures, written materials and other controls employed by CMS in the performance of its obligations hereunder are proprietary in nature and will remain the property of CMS. Information concerning such may not, at any time, be used, distributed, copied or otherwise utilized by the Sheriff or his Designee, except in connection with the delivery of health care services hereunder, or as permitted or required by law, unless such disclosure is approved in advance writing by CMS.

1.6.5   <u>Sheriff or his Designee Records Available to CMS with Limitations on Disclosure</u>. During the term of this Agreement and for a reasonable time thereafter, the Sheriff or his Designee will provide CMS, at CMS' request, the Sheriff or his Designee's records relating to the provision of health care services to inmates as may be reasonably requested by CMS or as are pertinent to the investigation or defense of any claim related to CMS' conduct, upon reasonable prior notice. Consistent with applicable law, the Sheriff or his Designee will make available to CMS such records as are maintained by the Sheriff or his Designee, hospitals and other outside health care providers involved in the care or treatment of inmates (to the extent the Sheriff or his Designee has any

17

control over those records) as CMS may reasonably request. Any such information provided by the Sheriff or his Designee to CMS that the Sheriff or his Designee considers confidential shall be kept confidential by CMS and shall not, except as may be required by law, be distributed to any third party without the prior written approval of the Sheriff or his Designee.

1.7  SECURITY

   1.7.1  <u>General.</u>  CMS and the Sheriff or his Designee understand that adequate security services are necessary for the safety of the agents, employees and subcontractors of CMS as well as for the security of inmates and Sheriff or his Designee's staff, consistent with the correctional setting. The Sheriff or his Designee will provide sufficient security to enable CMS to safely and adequately provide the health care and mental health care services described in this Agreement. Nothing herein shall be construed to make the Sheriff or his Designee, his deputies or employees a guarantor of the safety of CMS employees, agents or subcontractors, including their employees.

   1.7.2  <u>Loss of Equipment and Supplies.</u>  The Sheriff or his Designee shall not be liable for loss of or damage to equipment and supplies of CMS, its agents, employees or subcontractors unless such loss or damage was caused by the negligence or willful destruction of the Sheriff or his Designee or his employees.

18

1.7.3   Security during Transportation Off-Site. The Sheriff or his Designee will provide security as necessary and appropriate in connection with the transportation of any inmate between the Facilities and any other location for off-site services as contemplated herein.

1.8   OFFICE SPACE, EQUIPMENT, INVENTORY AND SUPPLIES

1.8.1   General. The Sheriff or his Designee agrees to provide CMS with office space, facilities, equipment, utilities (including all local telephone costs, but excluding long distance telephone costs, which CMS shall reimburse monthly to the County). The Sheriff or his Designee will provide necessary maintenance and housekeeping of the office space and facilities. CMS agrees it has inspected the Facilities and medical office space and facilities and that such space and facilities are sufficient for its agents, employees and subcontractors to perform all of the obligations required under this Agreement.

1.8.1.1 Office and Clinical Supplies, Furniture and Equipment. Medical Unit Equipment and Peripheral Supplies: CMS will have full use of the Medical Unit equipment owned by the County. It is for their use in carrying out the requirements of these specifications. At the inception of this Agreement an inventory of all equipment and supplies will be conducted noting the condition of the equipment and the equipment that can be anticipated to require replacement during the term of

19

this Agreement. CMS, at its own expense, will have the right (subject to written authorization from the County and Sheriff) to install any new equipment needed for efficient operations which shall remain the property of CMS at the conclusion of this Agreement.

1.8.1.2 CMS shall, at its own expense, maintain and repair the Medical Unit Equipment in use and new equipment installed during the course of this Agreement.  If CMS believes a piece of County owned equipment is antiquated or beyond meaningful repair, it may, upon notification to the Sheriff, remove the item and replace it with equipment of its own choice and at its own expense, which shall remain the property of CMS at the termination of this Agreement.

1.8.1.3 CMS will provide, install and maintain any new equipment at its own cost, meeting all Monroe County codes and specifications, and ensuring uninterrupted medical service. Any such equipment shall remain the property of CMS at the termination of this Agreement.

1.8.1.4 CMS will consult with Sheriff regarding disposition of county owned equipment.

1.8.1.5 CMS has primary responsibility for disposition of all replaced equipment, with County reserving the right to take possession

20

of replaced County equipment.

1.8.1.6 The County shall permit CMS to install additional equipment (medical service or otherwise) at CMS' own expense with the Sheriff's and County's written approval; any such additional equipment shall remain the property of CMS at the termination of this Agreement.

1.8.1.7 Upon expiration of this Agreement, CMS shall be responsible for the removal of said equipment and restoration of all areas to their original condition. Documentation of condition of equipment is the responsibility of CMS and an inventory at the termination of the Agreement noting condition will be conducted.. All equipment installed shall be removed within a reasonable time, but no later than thirty (30) days of the expiration of the Agreement; otherwise said equipment will become property of the County.

1.8.1.8 In the event of termination for cause, all equipment shall remain in place until the medical unit is in operation by the county or another Vendor or for a term not to exceed 120 days.

1.8.1.9 CMS is to provide at its expense any telephones or telephone system not presently in place, and any office equipment (e.g., copiers, fax, computers, monitors, printers, and typewriters) that it requires. Maintenance shall be the obligation of CMS

21

1.8.2  The cost or value of all office equipment brought on site by CMS or purchased for use on site shall not be charged as a line item to the contract and shall remain the property of CMS during and at the termination of the Agreement.

1.8.3  All supplies on site on at the start of the contract (January 1, 2004) may be used by CMS and consumed during the operation of its program without cost or obligation.  CMS, at its expense, shall provide additional supplies such as blank forms and records, manuals, printed materials, publications, pamphlets and materials for printing. Any such materials unused or not consumed at the expiration or termination of the Agreement shall remain on site and be the property of the County.

1.8.4  All additional clinical supplies are the responsibility of CMS. All clinical supplies on site are the property of the County and any such supplies on hand at the expiration or termination of the contract shall remain on site as the property of the County.

1.8.5  CMS in its performance under this Agreement may use all clinical equipment on site.  Such equipment is to remain the property of the County.  However, maintenance of all clinical equipment will be the responsibility of CMS. All equipment on site on the date of implementation of the Agreement or purchased by the County during the term of the Agreement (including any extensions thereof) shall be and remain the property of the County.

22

1.8.6   Maintenance of Equipment: It will be the responsibility of CMS to maintain equipment and to provide that any state and federal inspections or certifications are met, as appropriate.

1.9   <u>General Maintenance Services</u>. The Sheriff or his Designee will provide for each inmate receiving health care services the same services and facilities provided by the Sheriff or his Designee for all inmates at the Facilities including, but not limited to, daily housekeeping services, dietary services, building maintenance services, personal hygiene supplies and services, and linen supplies.

## 2   LIABILITY AND RISK MANAGEMENT

2.1   <u>Insurance</u> - The Contractor will be required to have and to maintain throughout the contract period the following insurance coverage:

2.1.1.   Statutory New York State Workers' Compensation, including Employer's Liability [coverage B].

2.1.2.   General Liability Insurance with liability limits of $1 million per person and $3 million per occurrence. This coverage may be in the form of a single policy or a basic policy plus umbrella coverage.

2.1.3.   Automobile Liability and Property Damage covering owned, non-owned and hired vehicles with minimum combined single limits of $1 million each occurrence.

2.1.4.   Professional Liability and Malpractice, with minimum limits of $1 million per occurrence, $3 million aggregate. This coverage may be in the form of a single policy or umbrella coverage.

2.1.5. In addition, the professional liability and malpractice insurance policy shall be issued on a "claims made" basis, or an extended reporting endorsement to the policy described in 2.1.4, shall also include coverage when the policy is discontinued, for a period no less than that established by New York State Law on limitations of actions in Federal or State Court.

2.1.6. CMS shall notify the County or the Sheriff or his Designee, in writing, of any reduction in policy amounts or cancellation of insurance coverage.

2.1.7. The above outlined insurance requirements as set forth in paragraphs 2.1 through 2.1.6 are the minimum during the term of this Agreement.

2.1.8. All policies shall be obtained from companies acceptable to the County. Companies providing insurance coverage shall be required to have nothing less than an "A" rating or better by the A.M. Best company of Aldwich, New Jersey.

2.1.9. The Sheriff and County shall be named as additional insured on all policies obtained by the Contractor.

2.2. Indemnification by CMS.

Notwithstanding the limits of any policy of insurance provided by the agency pursuant to this Agreement, CMS agrees to indemnify and hold harmless the County, the Sheriff and at the request of the County and Sheriff, defend the County and Sheriff against any and all claims, judgments, costs, awards, liability, loss,

24

damage, suit or expense of any kind which the County and Sheriff may incur, suffer or be required to pay by reason of or in consequence of the fault, failure, omission or negligence of CMS, its agents, officers, members, subcontractors, directors or employees, or the failure of CMS to carry out its duties under this Agreement or otherwise arising out of or in connection with this Agreement and the program of health care and mental health care services conducted by CMS and its providers. CMS shall not be required to defend or to indemnify the County for any damage or loss arising out of any negligent acts or willful misconduct of the County, Sheriff, their officers or agents. The County agrees to notify CMS' Legal Department in writing within thirty (30) days after the County has received written notice of a claim. CMS' indemnification and defense obligations hereunder will not apply for expenses incurred or settlements offered or effected prior to notice to CMS. CMS shall have the right to control the defense and/or settlement of a claim to which this indemnification obligation applies.

2.3 Indemnification by County.

The County does hereby agree to indemnify and hold harmless CMS, its agents, servants, employees and medical staff from any and all injuries, claims, actions, lawsuits, damages, judgments or liabilities of any kind whatsoever arising out of the operation and maintenance of the Facilities, the custody of inmates and all provisions for the physical security of all such CMS personnel, except as would relate to any injury, claim action, lawsuit, damage, judgment or liability caused by or contributed to by the negligence of CMS, its agents, servants, employees or

medical staff to the extent of such negligence.

2.4 <u>Certificates of Insurance</u>. The Contractor shall furnish Certificates of Insurance to the Office of Sheriff and Monroe County. Certification of such insurance shall be filed with the County prior to Contract signing and shall be subject to approval for adequacy and protection.

## 3   TERM AND TERMINATION OF AGREEMENT

3.1 <u>Term.</u>  This Agreement shall commence on January 1, 2004. The initial term of this Agreement shall be thirty-six (36) months. The Agreement may be extended for up to seven (7) additional one-year terms, if mutually agreeable to both parties.

3.2 <u>Termination</u>.  This Agreement may be terminated as otherwise provided in this Agreement or as follows:

    3.2.1.   Termination by Agreement.   In the event that each of the parties mutually agrees in writing, this Agreement may be terminated on the terms and date stipulated therein.

    3.2.2.   Termination by Cancellation.   Either party upon one hundred twenty (120) days prior written notice may cancel this Agreement without cause. Said termination shall be effective on the last day of the one hundred twenty day period.

    3.2.3.   Annual Appropriations and Funding.  This Agreement may be subject to the annual appropriation of funds by the Monroe County Legislature. Notwithstanding any provision herein to the contrary, if funds are not appropriated for this Agreement, then the County shall be entitled to

immediately terminate this Agreement, without penalty or liability.

3.2.4.  In the event of a conflict in terms or in interpretation between any of the applicable Contract Documents specified below, all incorporated by reference, any such conflict shall be resolved by giving precedence in the following order, most recently dated documents first:

3.2.4.1. This Agreement and any Exhibits, Attachments or Amendments;

3.2.4.2. CMS' best and final offer letter dated September 24, 2003;

3.2.4.3. CMS' Proposal dated August 15, 2003; and

3.2.4.4. County of Monroe, Office of Sheriff's Request for Proposals dated July 1, 2003.

3.2.5.  <u>Responsibility for Inmate Health Care</u>.   Upon termination of this Agreement, all responsibility for providing health care services to all inmates, including inmates receiving health care services at sites outside the Facilities, will be transferred from CMS to the County.

## 4.    COMPENSATION

The County hereby agrees to pay CMS a sum in full satisfaction of all expenses and compensation due the Contractor in an amount not to exceed seventeen million seven hundred thousand dollars ($17,700,000) for the initial three-year term of the Agreement. The County recognizes that it shall be responsible to pay CMS for all off-site care and psychotropic medications in excess of the annual aggregate cap amounts set forth in this Agreement, even

27

if the amounts in excess of the caps to be paid by the County cause the County's liability under this Agreement to exceed the maximum amount set forth in this paragraph.

4.1 The base amount of the compensation under this Agreement is five million three hundred ninety eight thousand and eighty four dollars ($5,398,084) for year one; five million six hundred nineteen thousand six hundred and nineteen dollars ($5,619,619) for year two; and five million eight hundred eighty six thousand four hundred seventy nine dollars ($5,886,479) for the third year.

4.2 CMS will invoice the County prior to the month in which services are to be provided. The County agrees to pay CMS on or before the last day of the month in which services are rendered.

4.3 In the event this Agreement should commence or terminate on a date other than the first or last day of any calendar month; compensation to CMS will be prorated accordingly for the shortened month.

4.4. Fluctuations in Inmate Population. An adjustment as an additional charge per day, per inmate, is authorized when the monthly average inmate population exceeds 1425 inmates as calculated the last day of each month. The amount is $1.89 in year one; $1.97 in year two; and $2.06 in year three.

4.5. Upon the completion of the work required hereunder by the Contractor, title to all work performed shall vest in the County of Monroe.

4.6. This Agreement shall be deemed executory only to the extent of funds available and the County shall incur no liability beyond the funds annually budgeted therefor.

28

4.7. The Contractor agrees that it will not assign, transfer, convey, sublet or otherwise dispose of this Agreement or its right, title or interest therein, nor any part thereof, nor any monies which are or will become due and payable thereunder without the proper written consent of the County of Monroe.

## 5.   MISCELLANEOUS

5.1 Independent Contractor Status.   The parties acknowledge that CMS is an independent contractor.  Nothing in this Agreement is intended nor shall be construed to create an agency relationship, an employer/employee relationship, or a joint venture relationship among the parties.

5.2.  Assignment and Subcontracting.  CMS shall not assign this Agreement to any other corporation or entity without the express written consent of the County and Sheriff or his Designee, which consent shall not be unreasonably withheld.  Any such assignment or subcontract shall include the obligations contained in this Agreement.  Any assignment or subcontract shall not relieve CMS of its independent obligation to provide the services and be bound by the requirements of this Agreement.

5.3.  Force Majeure: CMS shall not be deemed in violation of this Agreement if it is prevented from performing any of its obligations hereunder for any reason beyond its control, including, without limitation, strikes or labor disputes, inmate disturbances, lack of County financial or physical resources, failure of the County to provide proper security services, acts of God, civil or military authority, acts of public enemy, war, accidents, fires, explosions, earthquakes,

29

floods, failure of transportation, or any similar cause beyond the reasonable control of one or both of the parties.

5.4. <u>Notice.</u> Unless otherwise provided herein, all notices or other communications required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been duly given if delivered personally in hand or sent by certified mail, return receipt requested, postage prepaid, or sent via overnight delivery and addressed to the appropriate party at the following address or to any other person at any other address as may be designated in writing by the parties:

County:      Patrick M. O'Flynn, Sheriff

Monroe County Sheriff's Office

130 Plymouth Avenue South

Rochester, New York 14614

CMS      Richard A. Carter, Division President

Correctional Medical Services, Inc.

12647 Olive Boulevard

St. Louis, Missouri 63141-9052

Notices shall be effective upon receipt.

5.5. <u>Governing Law.</u> This Agreement and the rights and obligations of the parties hereto shall be governed by, and construed according to, the laws of the State of New York.

5.6. <u>Entire Agreement.</u> This Agreement constitutes the entire agreement of the parties and is intended as a complete and exclusive statement of the promises,

30

representations, and negotiations, discussions and agreements that have been made in connection with the subject matter hereof. No modifications or amendments to this Agreement shall be binding upon the parties unless the same is in writing and signed by the respective parties hereto. All prior negotiations, agreements and understandings with respect to the subject matter of this Agreement are superseded hereby.

5.7.   Amendment.  This Agreement may be amended or revised only in writing and signed by all parties.

5.8.   Waiver of Breach.  The waiver by either party of a breach or violation of any provision of this Agreement shall not operate as, or be construed to be, a waiver of any subsequent breach of the same or other provision hereof.

5.9.   Other Contracts.  The parties acknowledge that CMS is neither bound by nor aware of any other existing contracts to which either the Sheriff or his Designee or the County is a party and which relate to the providing of medical care to inmates at the Facilities.

5.10.  No Third Party Beneficiaries.  The parties agree that they have not entered into this Agreement for the benefit of any third person or persons. It is their express intention that the Agreement is intended to be for their respective benefit only and not for the benefit of others who might otherwise be deemed to constitute third-party beneficiaries hereof.

5.11.  Severability.  In the event any provision of this Agreement is held to be unenforceable for any reason, the unenforceability thereof shall not affect the

31

remainder of the Agreement, which shall remain in full force and effect and enforceable in accordance with its terms.

5.12. Liaison. The Sheriff or his Designee (so designated in writing by the Sheriff) shall be the liaison with CMS.

5.13. Discrimination.

5.13.1 During the performance of this Agreement, CMS and the Sheriff, their employees, agents, subcontractors, and assignees agree as follows:

5.13.2 None will discriminate against any employee or applicant for employment because of race, religion, color, sex or national origin, except where religion, sex or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of the contractor. Each will agree to post in conspicuous places, available to employees and applicants for employment, notices setting forth the provisions of this nondiscrimination clause.

5.13.3 In all solicitations or advertisements for employees, each will state that it is an equal opportunity employer.

5.13.4 Notices, advertisements and solicitations placed in accordance with federal law, rule or regulation shall be deemed sufficient for the purpose of meeting the requirements of this section.

5.14 Notice of Job Vacancies: The Contractor recognizes the continuing commitment on the part of Monroe County to assist those receiving temporary assistance to become employed in jobs for which they are qualified, and the

32

County's need to know when jobs become available in the community.

5.14.1 The Contractor agrees to notify the County when the contractor has or is about to have a job opening for a full-time position within Monroe County or any contiguous county. Such notice shall be given as soon as practicable after the Contractor has knowledge that a job opening will occur. The notice shall contain information that will facilitate the identification and referral of appropriate candidates in a form and as required by the Employment Coordinator. This would include at least a description of conditions for employment, including the job title and information concerning wages; hours per work week, location and qualifications (education and experience).

5.14.1.1    Notice shall be given in writing to: Employment Coordinator, Monroe County Department of Health and Social Services, 111 Westfall Road, Rochester, New York 14620, Fax: (585) 274-6623, Telephone:(585) 274-6610.

5.14.1.2    The Contractor recognizes that this is an opportunity to make a good faith effort to work with Monroe County for the benefit of the community. Nothing contained in this provision, however, shall be interpreted as an obligation on the part of the Contractor to employ any individual who may be referred by or through the County for job openings as a result of the above notice. Any decisions made by the Contractor to hire any

33

individual referred by or through the County shall be voluntary and based solely upon the Contractor's job requirements and the individual's qualifications for the job, as determined by the Contractor.

[The remainder of this page left intentionally blank.]

**ATTACHMENT A**

Sample Staffing Plan, Monroe County Jail

| Provider | Mon | Tue | Wed | Thu | Fri | Sat | Sun | FTE |
|---|---|---|---|---|---|---|---|---|
| Days | | | | | | | | |
| Health Administrator | 8 | 8 | 8 | 8 | 8 | | | 1.00 |
| Medical Director | 8 | 8 | 8 | 8 | 8 | | | 1.00 |
| Dentist | 8 | | | 8 | | | | 0.40 |
| Dental Assistant | 8 | | | 8 | | | | 0.40 |
| PA/NP | 8 | 8 | 8 | | 8 | | | 0.80 |
| Physician (clinics) | | | 2 | | | | | 0.05 |
| Nurse Supervisor | 8 | 8 | 8 | 8 | 8 | | | 1.00 |
| RN Sick Call | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 1.40 |
| RN Booking | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 1.40 |
| RN Reception | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 1.40 |
| LPN | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 4.20 |
| Medical Records Clerks | 16 | 16 | 16 | 8 | 8 | 8 | 8 | 2.00 |
| Administrative Assistant | 8 | 8 | 8 | 8 | 8 | | | 1.00 |
| Subtotal | | | | | | | | 16.05 |
| Evenings | | | | | | | | |
| RN | 24 | 24 | 24 | 24 | 24 | 16 | 16 | 3.80 |
| LPN | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 4.20 |
| Subtotal | | | | | | | | 8.00 |
| Nights | | | | | | | | |
| RN | 16 | 16 | 16 | 16 | 16 | 16 | 16 | 2.80 |
| LPN | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 1.40 |
| Subtotal | | | | | | | | 4.20 |
| | | | | | | | | |
| MCJ TOTAL | | | | | | | | 28.25 |

Sample Staffing Plan, Monroe Correctional Facility

| Provider | Mon | Tue | Wed | Thu | Fri | Sat | Sun | FTE |
|---|---|---|---|---|---|---|---|---|
| Days | | | | | | | | |
| Dentist | | 8 | | | | | | 0.20 |
| Dental Assistant | | 8 | | | | | | 0.20 |
| MD | 4 | 4 | | 4 | 4 | | | 0.40 |
| PA/NP | 4 | | 8 | | 4 | | | 0.40 |
| Nurse Supervisor | 8 | 8 | 8 | 8 | 8 | | | 1.00 |
| RN Sick Call | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 1.40 |
| LPN | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 1.40 |
| Medical Records Clerks | 16 | 16 | 16 | 8 | 8 | 8 | 8 | 2.00 |
| Subtotal | | | | | | | | 7.00 |
| Evenings | | | | | | | | |
| RN | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 1.40 |
| LPN | 8 | 8 | 8 | 8 | 8 | 8 | 12 | 1.50 |
| Subtotal | | | | | | | | 2.90 |
| Nights | | | | | | | | |
| RN | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 1.40 |
| Subtotal | | | | | | | | 1.40 |
| | | | | | | | | |
| MCF TOTAL | | | | | | | | 11.30 |

## ATTACHMENT A  (continued)

### Sample Staffing Plan, Mental Health Services

| Provider | FTE |
|---|---|
| Psychiatrist (Psychiatrist and Nurse Practitioner hours may be combined) | 0.50 |
| Nurse Practitioner | 0.50 |
| Intake Specialists | 2.40 |
| Mental Health Director | 1.00 |
| Mental Health Specialist | 3.00 |
| Transition Coordinator | 1.00 |
| Clerical | 1.00 |
| Mental Health TOTAL | 9.40 |

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above written.

COUNTY OF MONROE

By: _____

    John D. Doyle

County Executive

By: _____

    Undersheriff

    Sheriff Patrick M. O'Flynn

CORRECTIONAL MEDICAL SERVICES, Inc.

By: _____

Richard A. Carter

Division President

Tax I.D. No. 43-1281312

## AMENDATORY AGREEMENT NO. 1

THIS AMENDATORY AGREEMENT, which shall be deemed to be dated as of the date the last party executed this Amendatory Agreement, by and between the COUNTY OF MONROE, a municipal corporation with offices at the County Office Building, 39 West Main Street, Rochester, New York 14614 (the "County"), the MONROE COUNTY SHERIFF, with offices at 130 South Plymouth Avenue, Rochester, New York 14614 (the "Sheriff") and Correctional Medical Services, Inc., a Missouri corporation, with offices at 12647 Olive Boulevard, St. Louis, Missouri 63141, (the "Contractor" and/or "CMS").

### WITNESSETH:

WHEREAS, the County is charged by law with the responsibility for obtaining and providing reasonably necessary medical care and mental health care for inmates under the care and custody of the Monroe County Sheriff at the Monroe County jail facilities ("Facilities"); and

WHEREAS, the County desires to provide for health care and mental health care to inmates in accordance with applicable law; and

WHEREAS, the County, the Sheriff and the Contractor previously entered into an agreement dated December 31, 2003 (the "Agreement"), whereby the Contractor agreed to provide the services set forth in Section 1 of said Agreement; and

WHEREAS, the County, the Sheriff and the Contractor wish to amend said Agreement to increase the amount of the aggregate limitation on Contractor's financial responsibility for psychotropic medications for calendar years 2005 and 2006; and

WHEREAS, the Monroe County Legislature, by Resolution No. 370 of 2003 has authorized the execution of this Amendatory Agreement with the Contractor.

NOW, THEREFORE, it is mutually covenanted and agreed by and between the parties hereto as follows:

1.  For the contract periods of January 1, 2005 through December 31, 2005 and January 1, 2006 through December 31, 2006, Section 1.1.8 of Article I of the Agreement shall be amended to read as follows:

    1.1.8 Limitations on Catastrophic Mental Health Medications: CMS shall provide all necessary psychotropic medications. CMS' financial responsibility for such medications shall be limited to an annual aggregate cap of two hundred seventy thousand dollars ($270,000). If less than the $270,000 is spent, then CMS will return the unspent balance to the County after final reconciliation of invoices. The County shall be responsible for the payment of any and all costs for psychotropic

medications in excess of the $270,000 annual aggregate cap.

2.  Except as expressly stated herein, all terms and conditions of the aforesaid Agreement between the County, the Sheriff and the Contractor shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have executed this Amendatory Agreement on the day and year first above written.

MONROE COUNTY

By: _____

MAGGIE BROOKS
COUNTY EXECUTIVE

APPROVED AS TO FORM BY:

_____
COUNSEL TO THE SHERIFF

By: _____

PATRICK O'FLYNN
SHERIFF

CORRECTIONAL MEDICAL SERVICES, INC.

By: _____

RICHARD A. CARTER
CHIEF OPERATING OFFICER

TAX I.D. NO. 43-1281312

State of New York )
                 )    ss:
County of Monroe )

On the *30th* day of *December* in the year 2005 before me, the undersigned, a Notary Public in and for said State, personally appeared MAGGIE BROOKS, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signatures on the instrument, the individual(s), or the person upon behalf of which the individual acted, executed the instrument.

*Mary Beth Musto*
Mary Beth Musto, Notary Public
Notary Public State of New York
Monroe County
Commission Expires Sept. 25, 20*06*

State of New York )
                 )    ss:
County of Monroe )

On the *4th* day of *November* in the year 2005 before me, the undersigned, a Notary Public in and for said State, personally appeared PATRICK M. O'FLYNN, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signatures on the instrument, the individuals, or the person upon behalf of which the individual acted, executed the instrument.

KEVIN M. NASCA
Notary Public, State of New York
Qualified in Monroe County
Commission Expires April 8, 200_
Notary Public

State of Missouri )
             )    ss:
County of St. Louis )

On the *27* day of *October* in the year 2005 before me, the undersigned, a Notary Public in and for said State, personally appeared RICHARD A. CARTER, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signatures on the instrument, the individuals, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public
Seal
Missouri

KELLY R. SMITH
St. Louis County
My Commission Expires
April 27, 2007

*Kelly R. Smith*
Notary Public

C:\Documents and Settings\aschbacher\My Documents\Monroe County\K Amendment Psych Cap 10-05 final.doc

## CERTIFICATION REGARDING
## DEBARMENT, SUSPENSION, AND RESPONSIBILITY

The undersigned certifies, to the best of his/her knowledge and belief, that the Contractor and its principals:

1.  Are not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded by any Federal department or agency;

2.  Have not within a three-year period preceding this transaction/application/proposal/ contract/agreement been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, State or local) transaction or contract under a public transaction; violation of Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property;

3.  Are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State or local) with commission of any of the offenses enumerated in paragraph 2 of this certification; and

4.  Have not within a three-year period preceding this transaction/ application/proposal/ contract/agreement had one or more public transactions (Federal, State or local) terminated for cause or default.

Date: _10/21/05_                          CORRECTIONAL MEDICAL SERVICES, INC.

                                By:    _____
                                       RICHARD A. CARTER
                                       CHIEF OPERATING OFFICER

## AMENDATORY AGREEMENT NO. 2

THIS AMENDATORY AGREEMENT, which shall be deemed to be dated as of the date the last party executed this Amendatory Agreement, by and between the COUNTY OF MONROE, a municipal corporation with offices at the County Office Building, 39 West Main Street, Rochester, New York 14614 (the "County"), the MONROE COUNTY SHERIFF, with offices at 130 South Plymouth Avenue, Rochester, New York 14614 (the "Sheriff") and Correctional Medical Services, Inc., a Missouri corporation, with offices at 12647 Olive Boulevard, St. Louis, Missouri 63141, (the "Contractor" and/or "CMS").

### WITNESSETH:

WHEREAS, the County is charged by law with the responsibility for obtaining and providing reasonably necessary medical care and mental health care for inmates under the care and custody of the Monroe County Sheriff at the Monroe County jail facilities ("Facilities"); and

WHEREAS, the County, the Sheriff and the Contractor previously entered into an agreement dated December 31, 2003 (the "Agreement"); and

WHEREAS, the County, the Sheriff and the Contractor seek to amend the Agreement to decrease the amount of the Contractor's compensation and to relieve the Contractor of the responsibility to post a performance bond, as required by the original Agreement.

NOW, THEREFORE, it is mutually covenanted and agreed by and between the parties hereto as follows:

1.   For the contract periods of January 1, 2006 through December 31, 2006, Section 4.1 of Article IV of the Agreement shall be amended to read as follows:

        4.1   The base amount of the compensation under this Agreement is five million three hundred ninety eight thousand and eighty four dollars ($5,398,084) for year one; five million six hundred nineteen thousand six hundred and nineteen dollars ($5,619,619) for year two; and five million eight hundred sixty six thousand four hundred seventy nine ($5,866,479) for the third year.

2.   For the contract period of January 1, 2006 through December 31, 2006, and any further renewal periods of the Agreement, Contractor does not need to provide security for its performance in the form of a performance bond.

3.   Except as expressly stated herein, all terms and conditions of the aforesaid Agreement between the County, the Sheriff and the Contractor shall remain in full

force and effect.

IN WITNESS WHEREOF, the parties hereto have executed this Amendatory Agreement on the day and year first above written.

MONROE COUNTY

By: _____

MAGGIE BROOKS
COUNTY EXECUTIVE

APPROVED AS TO FORM BY: _____

_____  By: _____

COUNSEL TO THE SHERIFF

PATRICK O'FLYNN
SHERIFF

CORRECTIONAL MEDICAL SERVICES, INC.

By: _____

RICHARD A. CARTER
CHIEF OPERATING OFFICER

TAX I.D. NO. 43-1281312



State of New York )
)           ss:
County of Monroe )

On the 22nd day of _May_ in the year 2006 before me, the undersigned, a Notary Public in and for said State, personally appeared MAGGIE BROOKS, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signatures on the instrument, the individual(s), or the person upon behalf of which the individual acted, executed the instrument.

_Mary Beth Musto_
Notary Public

Mary Beth Musto
Notary Public State of New York
Monroe County
Commission Expires Sept. 25, 20 _06_

State of New York :)
)           ss:
County of Monroe )

On the 30th day of _March_ in the year 2006 before me, the undersigned, a Notary Public in and for said State, personally appeared PATRICK M. O'FLYNN, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signatures on the instrument, the individuals, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public
SAMUEL O. UDOFA
Notary Public, State of New York
No. 01UD8077108
Qualified in Monroe County
My Commission Expires July 1, 2008

State of Missouri )
)           ss:
County of St. Louis )

On the 17 day of _March_ in the year 2006 before me, the undersigned, a Notary Public in and for said State, personally appeared RICHARD A. CARTER, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signatures on the instrument, the individuals, or the person upon behalf of which the individual acted, executed the instrument.

TRACY L. BARTOLI
St. Charles County
My Commission Expires
_____ 9, 2007

Notary Public

C:\Documents and Settings\KLexxip\Local Settings\Temporary Internet Files\OLK1D\Monroe County K Amendment No 2 re Bond v1 1-20-06 (2).doc

## CERTIFICATION REGARDING
## DEBARMENT, SUSPENSION, AND RESPONSIBILITY

The undersigned certifies, to the best of his/her knowledge and belief, that the Contractor and its principals:

1. Are not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded by any Federal department or agency;

2. Have not within a three-year period preceding this transaction/application/proposal/ contract/agreement been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, State or local) transaction or contract under a public transaction; violation of Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property;

3. Are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State or local) with commission of any of the offenses enumerated in paragraph 2 of this certification; and

4. Have not within a three-year period preceding this transaction/ application/proposal/ contract/agreement had one or more public transactions (Federal, State or local) terminated for cause or default.

Date: _3/17/06_     CORRECTIONAL MEDICAL SERVICES, INC.

By: _____

RICHARD A. CARTER
CHIEF OPERATING OFFICER

AMENDMENT NO. 3

TO

AGREEMENT

BETWEEN

MONROE COUNTY

AND

CORRECTIONAL MEDICAL SERVICES, INC.


THIS AGREEMENT, which shall be deemed to be dated as of the date the last party executed this Amendatory Agreement, by and between **MONROE COUNTY**, a municipal corporation, having its principal office at the Monroe County Office Building, 39 West Main Street, Rochester, New York 14614 (hereinafter referred to as the "County," the MONROE COUNTY SHERIFF, WITH OFFICES AT 130 Plymouth Avenue, Rochester, New York 14614 (hereinafter the "Sheriff") and Correctional Medical Services, Inc., a Missouri corporation, with offices at 12647 Olive Boulevard, St. Louis, Missouri 63141, (hereinafter the "Contractor" and/or "CMS"),

W I T N E S S E T H:

WHEREAS, the County, the Sheriff and the Contractor entered into an Agreement dated December 31, 2003; and

WHEREAS, that original agreement did not establish any limitation on the liability of the County for medical expenses incurred for Catastrophic Medical Care or for Catastrophic Mental Health Medications; and

WHEREAS, the original agreement between the County, the Sheriff and the Contractor, as authorized by Resolution No. 370 of 2003, adopted by the Monroe County Legislature on December 9, 2003, provided for negotiation of rates for one-year extensions of the original three year agreement; and

WHEREAS, the County, the Sheriff and the Contractor desire to enter into a one-year extension of the Agreement, and

WHEREAS, the County, the Sheriff and the Contractor desire to amend the Agreement to restructure the liability of the County and the Contractor for expenses incurred for Catastrophic Medical Care and also to limit the liability of the County for the cost of providing Catastrophic Mental Health Medications; and

WHEREAS, the County, the Sheriff and the Contractor desire to further amend the Agreement to clarify when medical services are provided to inmates of the facilities who are under guard outside of the facilities, and

WHEREAS, the County, the Sheriff and the Contractor desire to establish a negotiated rate for the base amount of compensation, and the rate of compensation for any increases in population above the level of 1425 inmates, for the period of the one-year extension of the Agreement,

NOW, THEREFORE, in consideration of the mutual covenants, hereinafter set forth, the parties hereto mutually agree as follows:

1.  Paragraph 1.1.7 of the Agreement, <u>Limitations on Catastrophic Medical Services</u>, is hereby amended to read as follows:

    CMS shall arrange for off-site medical services (including but not limited to inpatient hospitalization, outpatient services, emergency services and transportation, off-site specialty consults and professional fees associated with these services) for any inmate who, in the opinion of CMS' contracted on-site physician, requires such care. Effective January 1, 2007, CMS shall be responsible for the cost of such care up to the amount of Seventy-five Thousand Dollars ($75,000) per individual inmate in each contract year. The County shall be responsible for all of the cost beyond the amount of Seventy-five Thousand Dollars ($75,000) per individual inmate in each contract year.

2.  Paragraph 1.1.8 of the Agreement, <u>Limitations on Catastrophic Mental Health Medications</u>, is hereby amended to read, in its entirety, as follows:

    Effective January 1, 2007, there shall be no limitation with regard to the financial responsibility of CMS for all Mental Health Medications. CMS shall provide all necessary psychotropic medications and shall be solely financially responsible for all costs of such medications.

3.  Paragraph 1.1.11 of the Agreement, <u>Inmates Outside the Facilities</u>, subparagraph 1.1.11.1, is hereby amended to read, in its entirety, as follows:

    Health care services are intended only for those inmates in the actual physical custody of the Facilities. This includes inmates under guard in outside hospitals. This shall also include inmates in the care and custody of the Sheriff while in the attached city and county court facilities located within the Civic Center Complex and attached to the 130 Plymouth Avenue, Rochester, NY facility. Such inmates will be included in the daily population count. No other inmates, including those in outside hospitals, who are not under guard, shall be the responsibility of CMS, nor shall such inmates be included in the daily population count.

4.  Paragraph 4 of the Agreement, <u>Compensation</u>, subparagraph 4.1, is hereby amended by adding the following sentence:

2

The base amount of compensation under this Agreement is Seven Million Four Hundred Fifty Eight Thousand Dollars ($7,458,000) for the one-year contract extension, covering the period from January 1, 2007 through December 31, 2007.

5.    Paragraph 4 of the Agreement, <u>Compensation</u>, subparagraph 4.4, <u>Fluctuations in Inmate Population</u>, is hereby amended by adding the following sentence:

The amount of this adjustment shall be $2.16 per inmate for the one-year contract extension, covering the period from January 1, 2007 through December 31, 2007.

6.    All other terms and conditions of the Agreement shall remain unchanged.

IT WITNESS WHEREOF, the parties have hereunto executed this Agreement.

**MONROE COUNTY**

By: _____
       MAGGIE BROOKS
       County Executive

APPROVED AS TO FORM BY:
_____
COUNSEL          SHERIFF

By: _____
       PATRICK O'FLYNN
       Sheriff

**CORRECTIONAL MEDICAL SERVICES, INC.**

By: _____
       VICKIE L. BYBEE
       Chief Operating Officer

3

State of New York   )
County of Monroe   ) ss:

On the _3rd_ day of _May_ in the year _2007_ before me, the undersigned, a Notary Public in and for said State, personally appeared MAGGIE BROOKS, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_Mary Beth Musto_
Notary Public

Mary Beth Musto
Notary Public State of New York
Monroe County
Commission Expires Sept 25, 20 _11_

State of New York   )
County of Monroe   ) ss:

On the _14th_ day of _May_ in the year _2007_ before me, the undersigned, a Notary Public in and for said State, personally appeared PATRICK O'FLYNN, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

SAMUEL O. UDOFA
Notary Public, State of New York
No. 01UD6077106
Qualified in Monroe County
My Commission Expires July 1, 20 _10_

State of _Missouri_   )
County of _St. Louis_   ) ss:

On the _23rd_ day of _April_ in the year _2007_ before me, the undersigned, a Notary Public in and for said State, personally appeared _Vickie Bybee_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signatures(s) on the instrument, the individuals(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

MARY M. MAWHINNEY
My Commission Expires
March 1, 2011
St. Louis County
Commission #07431758

4

*CERTIFICATION REGARDING*
*DEBARMENT, SUSPENSION, AND RESPONSIBILITY*

The undersigned certifies, to the best of her knowledge and belief, that the Contractor and its principals:

1.  Are not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded by any Federal department or agency;

2.  Have not within a three-year period preceding this transaction/application/proposal/ contract/agreement been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, State or local) transaction or contract under a public transaction; violation of Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making, false statements, or receiving stolen property;

3.  Are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State or local) with commission of any of the offenses enumerated in paragraph 2 of this certification; and

4.  Have not within a three-year period preceding this transaction/ application/proposal/ contract/agreement had one or more public transactions (Federal, State or local) terminated for cause or default.

Date: _5/9/07_                    CORRECTIONAL MEDICAL SERVICES, INC.

                         By: _Vickie Bybee_  r=rA
                             Vickie Bybee
                             Chief Operating Officer

5

AMENDATORY AGREEMENT NO. 4

THIS AMENDATORY AGREEMENT, which shall be deemed to be dated as of the date the last party executed this Amendatory Agreement, by and between the COUNTY OF MONROE, a municipal corporation with offices at the County Office Building, 39 West Main Street, Rochester, New York 14614 (the "County"), the MONROE COUNTY SHERIFF, with offices at 130 South Plymouth Avenue, Rochester, New York 14614 (the "Sheriff") and Correctional Medical Services, Inc., a Missouri corporation, with offices at 12647 Olive Boulevard, St. Louis, Missouri 63141, (the "Contractor" and/or "CMS").

WITNESSETH:

WHEREAS, the County is charged by law with the responsibility for obtaining and providing reasonably necessary medical care and mental health care for inmates under the care and custody of the Monroe County Sheriff at the Monroe County jail facilities ("Facilities"); and

WHEREAS, the County desires to provide for health care and mental health care to inmates in accordance with applicable law; and

WHEREAS, the County, the Sheriff and the Contractor previously entered into an agreement dated December 31, 2003 (the "Agreement"), whereby the Contractor agreed to provide the services set forth in Section 1 of said Agreement; and

WHEREAS, the County, the Sheriff and the Contractor previously amended said Agreement to increase the amount of the aggregate limitation on Contractor's financial responsibility for psychotropic medications for calendar years 2005 and 2006; and

WHEREAS, the County, the Sheriff and the Contractor previously amended, said Agreement to eliminate the Performance Bonding option in the original proposal of the Contractor for the calendar years 2005 and 2006; and

WHEREAS, the Monroe County Legislature, by Resolution No. 370 of 2003 has authorized the execution of this Amendatory Agreement with the Contractor.

NOW, THEREFORE, it is mutually covenanted and agreed by and between the parties hereto as follows:

For the contract periods of January 1, 2008 through March 31, 2008, the Agreement shall be amended to read as follows:

1.     Section 1.1.7 <u>Limitations on Catastrophic Medical Services</u>:

CMS shall arrange for off-site medical services (including but not limited to inpatient hospitalization, outpatient services, emergency services and transportation, off-site specialty consults and professional fees associated with these services) for any inmate who, in the opinion of CMS' contracted on-site physician, requires such care. CMS' liability for the costs associated with the medical services for inmates rendered outside of the Facilities is as follows:

CMS shall be responsible for the cost of such care, whose actual dates of service occur during the contract extension period (1/1/08 through 3/31/08) up to Eighteen Thousand, Seven Hundred and Fifty Dollars ($18,750) per individual inmate. Monroe County is responsible for 100% of the cost beyond the Eighteen Thousand, Seven Hundred and Fifty Dollars ($18,750) per individual inmate for the term of this agreement.

2.     Section 1.1.8 <u>Limitations on Catastrophic Mental Health Medications</u>:

There shall be no limitation on Mental Health Medications. CMS shall provide all necessary psychotropic medications. CMS is financially responsible for all such medications.

3.     Section 1.1.11 <u>Inmates outside the Facilities</u>.

1.1.11.1 Health care services are intended only for those inmates in the actual physical custody of the Facilities. This includes inmates under guard in outside hospitals. This shall also include inmates in the care and custody of the Sheriff while in the attached city and county court facilities immediately attached to the 130 Plymouth Avenue, Rochester, NY facility. Such inmates will be included in the daily population count. No other inmates, including those in outside hospitals, who are not under guard, shall be the responsibility of CMS, nor shall such inmates be included in the daily population count.

4.     1.2 PERSONNEL, shall remain the same with the exception of Section 1.2.3:

The per diem rate for population increase above a monthly inmate population average of 1425 for the period January 1, 2008 to March 31, 2008 shall be Two and 25/100 Dollars ($2.25) per inmate in excess of 1425 per day.

2

5.    Section 4, COMPENSATION:

   Upon mutual agreement the parties have exercised the option to extend the term of the contract for a three (3) month period. The compensation for the agreement period (January 1, 2008 through March 31, 2008) is One Million, Nine Hundred Forty Six Thousand, Five Hundred and Thirty Eight ($1,946,538).

6.    Except as expressly stated herein, all terms and conditions of the aforesaid Agreement between the County, the Sheriff and the Contractor as amended shall remain in full force and effect.

   IN WITNESS WHEREOF, the parties hereto have executed this Amendatory Agreement on the day and year first above written.

APPROVED
AS TO
SUFFICIENCY
OF FUNDS
SOURCE 380409000D
DATE  12 / 28 / 07
BY
MONROE COUNTY
BUDGET DIRECTOR

APPROVED AS TO FORM BY:
COUNSEL TO THE SHERIFF

MONROE COUNTY

By: _____
Maggie Brooks
County Executive

APPROVED AS TO
FORM
BY
MON. CO.
ATTORNEY

By: _____
Patrick O'Flynn
Sheriff

CORRECTIONAL MEDICAL SERVICES, INC.

By: _____
Vickie Bybee
Chief Operating Officer

TAX I.D. NO.: 43-1281312

3

State of New York )
                    )    ss:
County of Monroe )

On the *31st* day of *December* in the year 2007 before me, the undersigned, a Notary Public in and for said State, personally appeared MAGGIE BROOKS, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signatures on the instrument, the individuals, or the person upon behalf of which the individual acted, executed the instrument.

*Mary Beth Musto*
Notary Public

Mary Beth Musto
Notary Public State of New York
Monroe County
Commission Expires Sept. 25, 20 *10*

State of New York )
                    )    ss:
County of Monroe )

On the *11* day of *December* in the year 2007 before me, the undersigned, a Notary Public in and for said State, personally appeared PATRICK M. O'FLYNN, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signatures on the instrument, the individuals, or the person upon behalf of which the individual acted, executed the instrument.

JENNIFER M. SOMMERS
Notary Public, State of New York
No. 02SO5076289
Qualified in Monroe County
Commission Expires
July 1, *2011*

Notary Public

State of *Missouri* )
                    )    ss:
County of *St. Louis* )

On the *3rd* day of *December* in the year 2007 before me, the undersigned, a Notary Public in and for said State, personally appeared VICKIE BYBEE, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individuals, or the person upon behalf of which the individual acted, executed the instrument.

MARY M. MAWHINNEY
My Commission Expires
March 1, 2011
St. Louis County
Commission #07491758

Notary Public

4

## CERTIFICATION REGARDING
## DEBARMENT, SUSPENSION, AND RESPONSIBILITY

The undersigned certifies, to the best of her knowledge and belief, that the Contractor and its principals:

1.  Are not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded by any Federal department or agency;

2.  Have not within a three-year period preceding this transaction/application/proposal/ contract/agreement been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, State or local) transaction or contract under a public transaction; violation of Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property;

3.  Are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State or local) with commission of any of the offenses enumerated in paragraph 2 of this certification; and

4.  Have not within a three-year period preceding this transaction/ application/proposal/ contract/agreement had one or more public transactions (Federal, State or local) terminated for cause or default.

Date: 12-3-2007                 CORRECTIONAL MEDICAL SERVICES, INC.

By: _Vickie Bybee_ VK/JA
Vickie Bybee
Chief Operating Officer

5

DOS-1248 (11/96)

# DEPARTMENT OF STATE
UNIFORM COMMERCIAL CODE
ALBANY, NY 12231-0001



016H26520531

**Hasler**

$07.680

02/18/2010

Mailed From 12231

US POSTAGE

CERTIFIED MAIL

Sender:

USA CERTIFIED

*Patents 3,573,377 *
*4,637,648*
* 5,548,809*
3-UP Laser Form   /USA GMF-075 05/08*